Case 18-2405, Phyllis Davis v. Echo Valley Condominium Association, et al. Oral argument, 15 minutes per side. Mr. Gaucher for the appellant. Your Honor, may I reserve five minutes? Sure. Your Honor, may it please the Court. The District Court granted summary judgment for the defendants when it should have granted summary judgment for the plaintiffs, for one simple reason. All of the material evidence on record supports each and every element of the plaintiff's claim. The defendants have no material rebuttal evidence. This is, at first, a simple breach of covenant in which the Association, its very purpose, was created to protect the community and to enforce the bylaws. There are seven different bylaw provisions. So you're asking for summary judgment in your favor, right? Correct. You're not asking for a trial. You just think you should prevail as a matter of law. Yes, Your Honor. Okay. We believe that if we prevail on one of the seven theories for why there's a breach of covenant, and if the defendants fail to enforce that covenant, then they're liable. Does that mean you're conceding that there's just no fact dispute here, and that one party or the other wins as a matter of law? I believe on this issue, yes, absolutely. On the contract issue? On the contract issue. The question of whether there's a valid covenant is a matter of law. That's undisputed. That there is a valid covenant, that it does apply to both Echo Valley and to the defendants' Casa Bella, which is the property management company. There is no question that their requirement is to enforce. There is no question that she has a cause of action if they fail to do so. She has to pay dues every month to the Association. What does she get in return? The enforcement of the bylaws, equally and across the board. So the bylaws just don't specifically say anything on smoking one way or the other, as far as I can tell? Correct. The bylaws don't prevent meth labs, they don't prevent elephants, and they don't prevent rocket launchers. But what they do do is they create a standard of the community. They say, yes, we could just have standard nuisance law, which is the traditional tort and the claim. But everyone who lived at Echo Valley agreed to sign up and live in a community by contract that says, no, not only not nuisances, anything that may be or become an annoyance or a nuisance is sufficient to trigger liability. Do you think, so I guess the one question I'm struggling with is just at a high level. The Supreme Court has a doctrine or a theory of interpretation coined by Justice Scalia that one doesn't hide elephants in mouse holes. And the idea is a significant provision wouldn't be hidden in kind of vague or general provisions. And if I'm thinking about buying a condominium, one of the things I would think about are pets, which is specifically covered, and certainly smoking. And so what should we make of the fact that you're effectively asking us to ban smoking in units, even though there's not a specific provision in place through this general language? But not exactly. If there was a way in which they could smoke without creating this issue, that wouldn't be a problem. And that's why just an outright ban on the bylaws doesn't make sense. It's context specific. For instance, e-cigarettes may not create cigarette smoke that interferes with other individuals. The very purpose of the master deed, the very constitution that is the foundation of this community, is that anything that annoys a fellow resident is prohibited. And then the bylaws are created out of that, and they say if it's unsafe, it's prohibited. If it's illegal, it's prohibited. If it may be an annoyance, it doesn't even have to be an annoyance, it's prohibited. And then there's a board and an association. So whatever I decide as a tenant annoys me, I can go to the association and say, you need to make that person stop it, whatever subjectively annoys me? This may not be a community that certain people want to live in, but this is the community they chose to live in, and that is the contract. They chose to live in a community that doesn't prohibit smoking. Correct, it prohibits. In fact, they even voted when given the opportunity to say let's ban smoking, majority rules. Nope, we're not doing that. We have a bunch of reasons why that vote, which is after. Okay, well, let's not, I mean, we can talk about the vote, but let's say that the vote was valid. If the vote was valid, it would still be irrelevant, and the reason why is when people moved into the community, they signed a contract. You cannot change the terms of the contract. The contract doesn't say thou shalt not smoke, sir. What is important is that there is a mechanism to change the rules. If they want to allow smoking as an exception to the annoyance and the nuisance provisions, an exception to the unsafe and unclean provision, they can pass a bylaw that says despite all of these provisions that are applicable, smoking is allowed. The burden to change the bylaws is on the members. You're saying smoking should not, tobacco smoking should not be allowed because one tenant finds it annoying or a nuisance. Not one tenant. In 2009 is the first time we've seen the meeting of minutes in which the board recognizes there's a problem affecting tenants that do not smoke. We have evidence that multiple. We only have one plaintiff, is that right? We have one plaintiff. That is correct because many people, as we pointed out with the undisputed evidence, have left. The problem is the reason why they have the majority is because the people who bought their units, who wanted to live in a community like this, were forced out because they couldn't tolerate the smoke. You cannot have an environment in which individuals are forced out of their homes. How far does your argument go? I know your client elsewhere complained about the smells from cooking. That wouldn't give her the right to ban cooking, would it? Because she finds the cooking annoying? Correct. What distinguishes that hypothetical from this? The difference is that cooking is necessary. I think that at some point I will admit, although not made as the arguments by the defendants. Which would be annoying. It's a balance. Annoying but necessary is okay. I think annoyance and a nuisance provision we don't even have to get to because marijuana, for instance, is illegal. They've not enforced the bylaws against marijuana. That's a slam dunk. The agreement says do not do illegal activities. They allow illegal activities. Ms. Davis is harmed by those illegal activities. That is a breach of the bylaws. As it comes to cigarettes, there's no question that cigarettes are unsafe. There's no question that individuals who are in a room where there's cigarettes being pumped into their apartment are at higher risk of cancer. She has the right to not have that occur. Now, if it is possible that they can smoke cigarettes in their unit without seeping into, in mass quantities, by the way, not just a small amount, in mass quantities into the hallways of Ms. Davis' unit, then they can do so. Can I ask about that? I had a hard time figuring out what the objective evidence is of the amount of smoke that is coming into the apartment because I would think once you decide to live in a complex that allows for smoking in the abstract, that you recognize that there will be some amount of smoking smells in the complex. And so I would think that that's the baseline, and you'd have to at least show that it's an egregious level. And I was uncertain of, like, what's the best evidence you have, and can you pinpoint it for me? I will push back and say I think that shifting the burden because it doesn't mention cigarettes, it also doesn't mention meth labs, it doesn't mention elephants, it doesn't mention bazookas. They did not want to enumerate all of the things because the very spirit and the text of the bylaw show that this has the highest restrictions possible in any communal living. But the objective evidence is this. The previous president of Echo Valley said that when he walked into that hallway and he went down in the basement, simply by walking in the building and walking out, his clothes reeked of cigarettes. His clothes were saturated with the smell of cigarettes. Ms. Davis has also shown that her furniture, her towels, and her bathroom, that the cigarette smoke is so severe that in her bathroom, which is away from the front door, everything smells of cigarettes. The way that the building is structured, when someone smokes, it gets distributed. Can you give me a timeline? Because the way I read the timeline, it was in March of 2016 that she initially raised it with the board, and then they sent a letter. She was raising the argument orally at every board meeting, and the closest time on record that we have evidence of could be because this wasn't in dispute, but in November 2015, the board meeting minutes explicitly described that Phyllis Davis actually proposed that the board adopt that this is a nuisance in all of the things that we're alleging now for the most part, and that the bylaws committee adopted her resolution and agreed with other board members. What did the defendants do? They tabled it. It is now 2019. So what I really wanted to get at was in March 2016, they sent a letter to the tenant saying, please help us to fix this, be a good neighbor effectively. Correct. And then I didn't see anything until February, so there was like almost a year gap. Correct. So for five to six months from this proposal, they tabled it, did nothing. She kept going to every board meeting pleading, please help, please help, please help. They said, you know what, we'll send a letter that says it's not a breach of the bylaws, but we ask you to be kind to your neighbor. And then it isn't for almost an entire year that they decide to install a $50 tube. Was she complaining during that entire year? Every single meeting. And that is from the testimony of Colleen O'Rourke, who is the representative of Casa Bella. Thank you. I will reserve the rest of my time. Thank you. Counselor. Good morning. Kay Butler appearing on behalf of the Eppley's Echo Valley Condo Association and Casa Bella Property Management Company. Plaintiff purchased this condo unit in 2004 knowing that there was no prohibition on smoking. Her entire complaint, her complaints prior to this litigation, all center around the tenants in unit 115, which is one of the four units in her building. The tenants in unit 115 were smoking cigarettes. There was no allegation that they were smoking anything illegal. There was no allegation that they had a meth lab or that they had bazooka rockets or anything else that was illegal. Instead, her allegations pre-suit were all that the tenants in 115 were smoking cigarettes. The complaint in this case is also narrowly tailored as to the alleged conduct occurring in unit 115, which was, again, the smoking by the tenants in that unit of cigarettes. She went into this knowing that other people in her condo complex could smoke. The tenants and the co-owners of unit 115 went into it, like everyone else in the condo association, knowing that there was no prohibition in place for them to do this. Is there a difference? So I agree with you that there's nothing in the contract that suggests there is an absolute ban on smoking, but this is a narrower argument that, okay, so a reasonable amount of smoking smells can come out when you have a smoke-allowed condominium, but my position or her position would be that it's an egregious amount. So how do you respond to the notion that maybe the annoyance provision could apply not to an objective level of smoke, but to the alleged egregious amount of smoke that is going into her apartment? Well, first of all, she hasn't shown what the amount of smoke was that was coming from unit 115. She speculates that it's coming in through the vents, but she has no scientific or other evidence that it's actually coming in through the vents, much less that it's coming in through the vents. But, I mean, the condo association counsel sought to remedy the problem, even going to the trouble to put on particular preventative measures for her on her ventilation system, right? Correct. So there's some acknowledgment there by your client. There's some acknowledgment of an effort to remedy the situation. No, that acknowledges the seriousness. I think one could argue that it acknowledges that the problem is sufficiently significant to attach something to her system. The breach of covenant claims against my clients are based on their alleged failure to enforce the bylaw provisions. The board of directors did not. Well, because it's a nuisance, right? Correct. But the board of directors did not determine that the smoke. Right, not explicitly. Rose to the level of an annoyance or a nuisance, particularly since there was no ban on smoking. However, the board did take appropriate action in response to her complaints by, first of all, sending in 2016 a letter to the co-owners, which wasn't just a be kind to your neighbors letter. Instead, it acknowledged that there had been complaints about the smoke and set forth other possibilities that the co-owners could use in that unit to try to limit the amount of smoke, such as an air purifier system, smoking outside, or using wet towels or some sort of vent system. And then when she continued to complain about it, they then went back and installed the fresh air system, which the plaintiff acknowledged to the heating and cooling contractor was effective, and other individuals testified that they had the same system. They found it to be 70% to 80% effective in eliminating the smoking smell. And then in further response to her complaints that it was an annoyance or nuisance, the board of directors implemented the vote in an effort to try to ban smoking altogether, which was not successful. So I guess the point I'm struggling with is, obviously, smoking in the abstract is allowed. I would think that it potentially could rise to the level of annoyance if all you're doing is, like, smoking into your neighbor's windows nonstop. So it strikes me that what's your response to the notion that there might be a fact dispute about how much smoke has been seeping into her apartment, which would prevent summary judgment if there's a genuine issue of material effect on that, because you yourself earlier suggested that it's just unknown or un- Well, it's a plaintiff's burden to show, first of all, that the condition or the smoking activity in Unit 115 created an annoyance or a nuisance. And then it's also her burden to show that my clients failed to respond properly and failed to enforce the bylaws in regards to the activity in Unit 115. Yeah, so your initial argument was the business judgment rule, I suppose, which was just as a legal issue, we exercised our discretion, we did all these things. Correct. I guess I was struggling with, are there actually any Michigan cases in particular? I know you said a Maryland case. That apply this in the context of condominiums? Or would we be, I mean, we're sitting in diversity, so we generally don't think that we should be making state law. We usually defer to what the Michigan courts have done here. There are no Michigan cases or no reported Michigan cases that address this issue. But there are Michigan cases addressing the business judgment rule. So the analogy would be that a condo association is like any other business, like any other board of directors, and would get protected by the business judgment rule. Correct. The board of directors has the ability to, and the responsibility, to manage the condo association. And the business judgment rule protects it from unnecessary judicial interference as far as the day-to-day operations and the interpretation of the bylaws as well as the enforcement of the bylaws. But it applies to nonprofit condo associations much as it does in the business setting. Other than that Maryland case, are there any other cases around the country that apply it in this context? The business judgment rule? Yeah, to a condo association or a homeowners association, something similar, I guess. We also cited a case in our brief from Maine, which similarly applied it to a community living association, which I'm not sure if it was a condo association right now or home, but it was a community living such as this. Because you have a different situation when people are living in a community association and they choose to live there. They go into it knowing that they're going to be in a situation where you can't claim annoyance because someone is cooking spicy food or that because someone gives you a dirty look at the mailbox. It's just you go into it and there's certain aspects that need to be weighed as far as everyone's interest. Let me ask you about the marijuana issue. I suppose what is your response to that? I mean it would be illegal, correct? And it would be problematic under the bylaws if that was going on and your clients knew about it and didn't do anything, right? It would be illegal under federal law, correct. And the bylaws prohibit unlawful conduct. And so that would be a separate issue. In this case, there was no allegation that the individuals in Unit 115 were smoking marijuana. Moreover, there's no allegation in the complaint that the individuals in Unit 115 were engaging in illegal activity. So where in the record does this question come up or what is the context? Did it come up in summary judgment or in depositions? Is there anything in the record? Is there any record evidence on marijuana? There was deposition testimony from other board members who indicated that they believed there was marijuana smoke in their building, which was not the plaintiff's building. Can I switch gears a little bit to the Fair Housing Act claim and just ask if you are actually – so the way I read the statute is there's a – the accommodation has to be necessary. And I think you make that the proposed accommodation or the requested accommodation wasn't reasonable. The district court seemed to hint a little bit that it also might not have been necessary because it wouldn't have cured the problem. Are you not making on appeal any necessary argument under the Fair Housing Act? We did raise that issue on appeal as well, and it ties in with the fact that she had previously complained about the cooking, which leads to the conclusion that banning smoking isn't necessarily going to allow her to enjoy the equal opportunity. But I do think that the strongest argument is that the requested accommodation, which was to ban smoking, and that was the only requested accommodation here after the letter. The requested accommodation was not reasonable in any sense of the word because the board of directors cannot ban smoking, particularly since the co-owners recently spoke and agreed that they do not want to ban smoking. Yeah, I guess it just seemed to me that reasonable is a more protein term, which makes it more subject to be a fact question on a case-by-case basis, whereas I could see the argument that this wouldn't be necessary because you took the first step of having the event outside, and then maybe there would be other narrower steps, including fixing some type of air circulation that seems less aggressive or intrusive on neighbors than the ban. Right, but under the Fair Housing Act claims, the Sixth Circuit law is clear that it's her responsibility to request a reasonable accommodation. And in this case, the accommodation that she requested first was to send the letter, which they did, and plaintiff dictated the language of the letter, and second, to ban smoking. And it's not a fact question whether the smoking ban is reasonable because it's clear and it's undisputed that the association cannot ban smoking under the law. And can I ask, what's your response on just whether she has a disability to their argument that because in your preliminary injunction motion there's a sentence in there that says, we concede that Asma has a disability under the Fair Housing Act, that that should be some type of admission? How should we treat their argument there? What's your best response to that? You know, the Sixth Circuit has also ruled that briefing in pleadings or briefing by attorneys is not admission, and that would apply here. It was a preliminary injunction matter. It was just for the purposes of that only. Subsequent to that, there was an answer to the amended complaint filed where we again indicated that there was no admission as to her disability status. What about, I guess their argument is kind of an equitable argument that they would have, is your position that the amended complaint should have put them on notice that it was disputed and so they should have recognized that they need to present evidence on this point? Correct, Your Honor. Unless there's any other further questions, I'll rest. Thank you. Thank you, Counsel. The position seems to be that we need evidence that the nuisance is some micrograms. That has never been held in any Michigan court ever. There have been multiple Michigan Supreme Court cases that we held where smoke was considered a nuisance. One, simply because it drove people out of their homes. Also, when it was dangerous. In one case from the Michigan Supreme Court, one of the earliest ones, says simply because people had to close their windows to their discomfort, it was a nuisance. The defendants and the board members who testified admitted it was a nuisance. This would be the first case that I have ever read in which all of those criteria were met where the defendants admitted it was a nuisance and that the plaintiff did not win on summary judgment. What do you do about this argument on the business judgment rule that the condo association is supposed to enforce these bylaws, they use their best judgment just like any other board of trustees, board of directors would? The agreement could provide for the deference to the board. It doesn't. And the idea that the board can simply But the business judgment rule simply applies as a matter of common law in most states, right? In Dubano, which is the Michigan Supreme Court case on this, it says it does not apply to non-economic decisions. And when it comes to a breach of contract or torturous conduct, almost every higher court in the nation has held that it does not make sense that the BJR would apply to breach of contract because it's a direct cause of action. And it may be good business judgment to breach a contract, but it does not get you out of liability. Did you find any cases rejecting across the country, if you know, rejecting the business judgment rule in this context in the specific, not with respect to contracts, but with respect to condominium associations and refusing to extend the business judgment rule? There are not that many cases that I have found that even considered this because the argument, I think, is facially problematic. But I will say the one decision that they cite that is in their favor in this context cites a higher court that actually says, acknowledging that BJR cannot protect against a cause of action for a breach of contract or a tort, and that makes sense. The reason why is it may be good business to breach your obligations. But also, if the BJR applied in the context of the condominium association, that would mean that they could functionally amend the bylaws simply by the decision of the board. However, the agreement itself provides a mechanism for doing that, and that's two-thirds. It doesn't make sense. And also, the board, they didn't meet any of the requirements of the BJR. They never voted. They never made a decision. They never investigated. It's undisputed that they never went to her apartment. The Michigan law is clear on this issue. What about maybe a lesser form of the argument that, yes, you could have sued the co-tenants directly, which I know you did, and it settled for the direct violations, but maybe there should be some. So you're suing the association not for the annoyance but for the enforcement language, and maybe there's some discretion in interpreting that language that, you know, they did take actions here. So to answer your question very quickly, and I do want to get to the Fair Housing Act because I think this is important, the answer is she should not be required to sue her co-tenants. That is the board's job. That's why she pays them dues. That's why she agrees to be in the condominium association. If the association didn't have to do its job, then just live in a residential community with covenants and enforce everything on your own. They all agreed to follow these rules and to have an association. When it comes to the Fair Housing Act, although we believe these are judicial submissions, we don't need to get there. Regarded is one way you can be disabled. The only evidence on record is a statement from the attorney that says, quote-unquote, plaintiff is handicapped, says she's not handicapped because of breast cancer, she's not handicapped because of multiple chemical sensitivity disorder, but we do not deny that as it meets the definition of the Fair Housing Act. If that is not a statement that qualifies as regarded, then no one can be qualified as regarded. But what about the response that oftentimes an admission in a preliminary injunction brief is an admission for purposes of the brief and you don't necessarily, like sometimes the state could actually consent to preliminary injunction. It doesn't have to be a judicial admission. What it is is evidence that's admissible in a court of law that they regard her as handicapped. You would admit the preliminary injunction brief? Correct. It's a statement of their agent, it's undisputed, and they had an opportunity to refute it and they didn't. She's regarded. The reason why this is a reasonable accommodation is for one simple reason. There's no question that this is a fire hazard that raises the rate of insurance, that cigarettes and marijuana by themselves should be banned according to the defendant's own admissions. If that is true, then what she is asking simply is reasonably for them to do what they are already required to do. If someone cannot be liable for not doing what they're already required to do under the Fair Housing Act, then what could be a reasonable accommodation? Ms. Davis has proven indisputably, at the bare minimum, this is the floor of the Fair Housing Act, not the ceiling. This is the floor of nuisance law, not the ceiling, and this is the floor of what condominium associations are required to do by law. Thank you very much. Counselor? We will take your case under submission and deliver an opinion in due course. Clerk may call the next case.